[Civ. No. 21845.   Second Dist., Div. One.   July 10, 1956.]

CAROLINE HERNANDEZ, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Byron Schwartz for Petitioner.

S. Ernest Roll, District Attorney, and Fred N. Whichello, Deputy District Attorney, for Respondent.

NOURSE (Paul), J. pro tem.*—By an information filed with the district attorney of the County of Los Angeles, petitioner is charged with violation of section 11500 of the Health and Safety Code.  Her motion to set aside the information, made pursuant to section 995 of the Penal Code, having been denied she here seeks a writ of prohibition to arrest further proceedings in the respondent court.

The relevant facts are:

Petitioner and one Taverez resided in an apartment at the rear of 1814 Workman Avenue in the city of Los Angeles.

Taverez had been indicted by the grand jury of Los Angeles County on a charge of the sale of narcotics.  Police of the city of Los Angeles learned that an automobile used by him was parked on Workman Avenue (adjacent to the apartment house in which petitioner and Taverez resided). The police staked out in the vicinity of the parked automobile,

*Assigned by Chairman of Judicial Council.

and when Taverez entered it they placed him under arrest and there took him into custody. After he was under arrest the officers were advised by a bystander that Taverez lived in an apartment at the rear of 1814 Workman Avenue, the door to which was about 95 feet from the place on the public street where Taverez was held under arrest, and that it was the apartment with a light on.

The officers then went to the apartment indicated by their informant and entered without invitation. They there found petitioner. They did not then have any knowledge of any unlawful act having been committed by petitioner, nor did they have any basis for believing that petitioner had committed a felony. They did not have a warrant for her arrest or a search warrant. They proceeded to search the apartment and found therein a quantity of narcotics. Petitioner admitted that one of the narcotics (dolophine) was hers and that she was using it. Petitioner was then placed under arrest.

The evidence seized in the apartment was received in evidence by the committing magistrate over petitioner's objection. It is conceded by respondent that if this evidence was improperly received, petitioner's motion made pursuant to section 995 of the Penal Code should have been granted, and that the writ prayed for here should issue.

We have concluded that the evidence in question was obtained through an unreasonable search and an unlawful seizure, and that therefore under the rule laid down in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], the evidence in question should have been excluded by the committing magistrate; and that petitioner is entitled to the writ she here prays for.

It is the contention of respondent that the search of the apartment occupied by petitioner and Taverez was a proper incident to the lawful arrest of Taverez. Respondent relies on *People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40], and *People* v. *Coleman*, 134 Cal.App.2d 594 [286 P.2d 582]. Neither of these cases supports respondent's contention. In each of them the premises searched were those in which a lawful arrest had been made. In the case at bar the arrest of Taverez was made upon the public street, and at the time of the arrest the officers were not even informed as to his place of residence.

Respondent also relies on *People* v. *Dixon*, 46 Cal.2d 456 [296 P.2d 557]. That case does not support its contention.

In the cited case the same arresting officer who made the arrest of petitioner here entered Dixon's apartment and placed her under arrest without a warrant. The officers searched the apartment and found material which is used to cut heroin. While they were in the apartment Dixon attempted to dispose of a key and it was taken from her by force. This key turned out to be the key to a garage connected with the apartment she rented. In the garage the officers found a quantity of heroin which had been cut. This drug was introduced into evidence against Dixon at her trial. The Supreme Court held that there having been no evidence to justify the entry, arrest, and search, the evidence was illegally obtained and should have been excluded; and reversed her conviction. It stated, however, that if on a new trial reasonable cause was shown for the entry into Dixon's apartment and her arrest, the contemporaneous search of the garage would be a lawful search as an incident to that arrest, since the garage was on the premises where the arrest was made and was under defendant's control. It is evident that this case is not authority for a search without a warrant of an arrested person's home and place of residence, when that arrest is not made upon the premises where the person arrested resides.

To us this case seems to be on all fours with that of *Agnello* v. *United States,* 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]. In that case Agnello and others were charged with conspiracy to violate the Harrison Act. Among the overt acts charged was the sale of a quantity of cocaine at the home of one Alba. The evidence introduced by the government showed that certain undercover agents of the government had negotiated with Alba and one Centorino for the purchase of narcotics; that Centorino left Alba's home and went to the home of Agnello and shortly thereafter returned with Agnello and another person to the home of Alba where a quantity of cocaine was delivered to the undercover agents. Agnello was immediately placed under arrest and Alba's premises searched. After Agnello's arrest the officers went to his home which was several blocks distant from the place where the narcotics were sold, searched it and found a quantity of cocaine. At the trial of the action Agnello testified that he did not know that the material he delivered to the undercover agents at the home of Alba was a narcotic and that he had never seen narcotics. The government then produced the cocaine which the officers had seized in Agnello's home, and when he denied knowledge of it was

permitted to prove that it had been seized in his home and that it was cocaine.

In holding that it was error to admit this evidence even by way of impeachment of Agnello's testimony that he had never seen narcotics, the Supreme Court of the United States held that while a search without a warrant of the premises where a lawful arrest is made does not violate the Fourth and Fifth Amendments of the Constitution of the United States, that fact did not justify the search of Agnello's home after his arrest was complete. In so holding, it said in part (51 A.L.R. at 412): "The legality of the arrests, or of the searches and seizures made at the home of Alba, is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests. But *the right does not extend to other places*. Frank Agnello's house was several blocks distant from Alba's house, where the arrest was made. When it was entered and searched, the conspiracy was ended, and the defendants were under arrest and in custody elsewhere. *That search cannot be sustained as an incident of the arrest.* (Citations.)

. . . . . . . . . . . .

"While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein. (Citations.) The protection of the 4th Amendment extends to all equally,— to those justly suspected or accused, as well as to the innocent. *The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws.*" [Emphasis added.]

*Agnello* v. *United States, supra,* is cited with approval by our Supreme Court in *People* v. *Gorg,* 45 Cal.2d 776, 781 [291 P.2d 469]. Our Supreme Court there said: "The attorney general contends that it is not unreasonable to search a man's dwelling after having arrested him some other place for a crime involving theft. Even if the object of the search was to recover other stolen articles, it was not incidental to the arrest, for it was at a distance from the place thereof and was not contemporaneous therewith. (Citations.)"

In the present case the search of the home of petitioner and Taverez was not an incident to Taverez' arrest. He was in his automobile on a public street when the arrest was made, and when he was there taken into custody his arrest

was completed. The fact that it turned out that Taverez' home was but 95 feet away from the place of his arrest does not change the complexion of this matter. His arrest was on a public street, not upon any part of the premises in which the apartment in which he lived was situated; and if we were to uphold a search of his home without a warrant because his home was but 95 feet from the place on the public street where he was arrested, we would necessarily have to uphold it if it were 95 blocks distant.

Inasmuch as the officers did not have the right to enter and search the home of Taverez, their arrest of him certainly cannot justify the search of petitioner's home.

Respondent argues that petitioner's admission before her arrest that the dolophine found in her home was hers and that she used it justified the magistrate in committing her. But this admission was only a by-product of the unlawful entry into her home, the unlawful search conducted therein, and the unlawful assertion of authority by the officers. It did not justify the admission of the illegally seized evidence against her. Without that evidence there was no proof of the corpus delicti, and therefore no basis upon which petitioner could be held to answer.

Let a peremptory writ of prohibition issue as prayed.

White, P. J., and Fourt, J., concurred.