303 P.2d 35]

[Crim. No. 1090.    Fourth Dist.    Nov. 13, 1956.]

THE PEOPLE, Respondent, v. GROVER HOWARD
COOK, Appellant.

2

Howard A. Muhleman, under appoinment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with grand theft in that on December 22, 1955, he feloniously took personal property of the Western Metals Supply Company, valued at $416. A jury found him guilty and he appeals from the judgment.

On December 20, 1955, the defendant purchased some fluorescent light bulbs from Western Metals Supply Company, which will be referred to as Western Metals. He paid the bill amounting to $49.48, and the billing indicated that the items were sold to the Western Floodlight Service at a certain address in Las Vegas. He asked for and obtained a special discount by saying that he was doing work for the Tidewater Associated Oil Company, and that Tidewater had a contract with the Sylvania Company and was entitled to a larger discount. On the same day the defendant told the vice-president of Western Metals that he had contracts with Tidewater and Richfield under which he was installing lights in their service stations.

On the morning of December 22, 1955, a salesman in the order department of Western Metals received a telephone call from a person saying he was Luke Waters, who said he was with Tidewater Associated Oil Company and wanted to place an order. He ordered a list of fluorescent bulbs in the name of Tidewater Associated Oil Company at a Los Angeles address, and said that he was in a hurry for delivery and would like to pick up the order himself. He was informed that the order would be turned over to one Caffey in another department and that he should contact Caffey about the

delivery. The man giving the order then stated that he could be contacted at the "San Diego Hotel."

Around noon of that day this person called Caffey on the telephone telling Caffey to ship the goods to Oceanside in care of Tidewater Associated Oil Company, and that he would pick it up there. The goods were placed in factory-packed boxes with identifying labels thereon. About 3 o'clock that afternoon, this person phoned Caffey that he would send his truck to pick up the merchandise. About 3:30 that day a dispatcher at a messenger service received a telephone call from a man giving the name of Luke Waters, stating that he was with Tidewater Associated Oil Company, asking the dispatcher to send one of their trucks to pick up this merchandise at Western Metals, and telling him to hold it at the office of the messenger service. A driver for the messenger service picked up the goods at Western Metals and brought them back to the messenger office. Later that day this person again called the messenger service and instructed them to deliver the goods to the Railway Express Company saying: "One of my men will be at the Railway Express Company. If you pull your truck in around the back, in other words where the freight cars are, a man there will meet you and take care of the merchandise." The truck driver for the messenger service drove to the Railway Express Company and inquired about a representative from Tidewater who was to receive the goods, but no one knew anything about it. Five minutes later an unidentified man approached the truck driver and asked if he had a load for the Tidewater Associated Oil. He informed the truck driver he was the man who was to take delivery, took the goods and paid the delivery charge.

It was established that the defendant was registered in the San Diego Hotel on December 22, 1955, having given his address as "Western Floodlight" at a certain address in Las Vegas, and that no such person as Luke Waters had been registered at the San Diego Hotel during December of 1955. There was also evidence that no person by the name of Luke Waters was employed by or known to Tidewater Associated Oil Company.

On December 28, 1955, this transaction was called to the attention of the San Diego Police Department. An investigation was made and it was discovered that several of the larger oil companies had been having trouble in that some person was installing lights in their stations, under the claim that this was authorized by the particular company. On January

19, 1956, in response to a telephone call, the officers went to a Mobilgas station in San Diego where they found the defendant with a truck containing a number of boxes with a quantity of fluorescent bulbs therein. The defendant said he was leasing the truck, that he was operating a business under the name of Howard's Western Floodlight Company, and that he was contacting service stations and selling them a service in replacing their lighting equipment. The defendant was arrested and the truck impounded. One of the boxes of fluorescent light bulbs, which was found in his truck, had the identifying tag and number which was on one of the packages secured from Western Metals on December 22. The defendant claimed to have purchased all of the merchandise in the truck. When the officer informed him that part of the lighting equipment in his truck was from a stolen shipment that occurred in San Diego on December 22 the defendant replied, "If there is any stolen property in the truck you planted it there." The defendant then said: "Maybe I bought that stuff from the McKinsey's—they're the ones probably—who got the stuff and sold it to me." Later the defendant told the officers that he had purchased the goods from Hunt and Van Slyke, and that Western Metals would get their money whenever they sent their bills through the proper channels. At another time he told the officers he had bought the bulbs with the Tidewater Associated Oil Company shipping label from an outfit in Las Vegas named "Todd Waters Associated Ores," that he picked up these lamps from that company in Las Vegas, and that Western Metals had not sent a bill to Todd Waters Associated Ores Company. On the same day, the defendant told another officer that he was not in San Diego on December 22, 1955; that he was suspicious that he had been taken in by some fellows in Las Vegas who ran the Todd Waters Associated Ores Company; that this company was located on Main Street in Las Vegas but he did not know the address; and that "Well, Waters told me that it was the Todd Waters Associated Ores Company." The officers went to Las Vegas and found there was no Todd Waters Associated Ores Company in Las Vegas, found that two of the addresses given by the defendant were fictitious, and they were unable to locate a Luke Waters anywhere. The defendant testified that he made a purchase from Western Metals on December 20 and that he did not make any telephone calls to Western Metals on December 22. With respect to the box of fluorescent bulbs identified as coming from Western Metals he testified

that he never wanted to believe that it was in his truck, but that it possibly could have been. Two witnesses testified that the defendant's voice and manner of talking closely resembled that of the person who had made the telephone calls on December 22. A tape recording of a conversation between the defendant and one of the officers was introduced in evidence and played to the jury.

The appellant first contends that the evidence of property found in his truck was erroneously admitted, because it was obtained by an illegal search and seizure. It is argued that the officers had no reasonable or probable cause for his arrest since they had no reason to believe that there was any connection between him and Luke Waters. The evidence discloses that the information in the hands of the officers at the time of the arrest was amply sufficient to show that a felony had been committed, and to show reasonable and probable grounds for believing that the defendant was the one who had committed it. The evidence was sufficient to justify his arrest, and a search of the car in connection therewith. No illegal search and seizure appears. (*People* v. *Baker*, 135 Cal.App.2d 1 [286 P.2d 510].)

It is next contended that certain evidence was improperly admitted over appellant's objection. Some 20 instances are cited in this connection, most of which are trivial and all of them are without merit. Some are claimed to be hearsay, and it is argued that certain witnesses testified with respect to appellant's transaction on December 20, when the matter in issue occurred on December 22. The matters involved had a material bearing on the main issue in the case. There was no error or prejudice in permitting the district attorney to tell a witness, when the tape recording was played, to pay particular attention to the voice answering the questions. This was for the purpose of comparing this voice with the voice of the person making the phone calls on December 22. Objection is made that one witness was allowed to testify as an expert without qualifying as such. This witness did not testify as an expert, but only as to what he did in filling the order on December 22. The other matters complained of were admissible as a part of the surrounding circumstances, and the argument here made goes to the weight of the evidence and not to its admissibility. In one connection it is argued that the appellant was deprived of the right of cross-examination because the testimony was such that any cross-examination would

have been unfavorable to the appellant. It is argued that the evidence that the officers were unable to find persons or firms at the addresses given by the appellant was negative evidence, and not sufficient to prove that they were not at those addresses on December 22, 1955. The weight of this evidence was for the jury. We find no prejudicial error in connection with the admission of evidence.

Finally it is contended that the evidence was insufficient to sustain the verdict. The only argument made in this connection is that while the court correctly instructed the jury with respect to what is necessary to establish the crime of theft based on false or fraudulent representation or pretenses, and what is necessary for a conviction based on circumstantial evidence, these conditions were not met and if the jury followed these instructions it could not have found as it did. It is argued that there was nothing to show any connection between the appellant and Luke Waters; that there was nothing to show any intent on the part of the appellant to defraud Western Metals; and that the evidence was insufficient since, in a circumstantial evidence case, the evidence must not only be consistent with the hypothesis of guilt but inconsistent with any other rational hypothesis. Under the rule last referred to the evidence, with the reasonable inferences therefrom, was sufficient to justify the jury in finding that the circumstances were not equally compatible with innocence and in bringing in a verdict of guilty. It cannot be said, as a matter of law, that upon no hypothesis whatever was the evidence sufficient to support the conclusion reached by the jury. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

The main issue in the case was as to the identity of the party ordering these goods from Western Metals on December 22. In other words, as to whether or not the appellant was the person who carried through that transaction under the name of Luke Waters. The evidence, with the reasonable inferences therefrom, sufficiently supports the jury's finding in that regard. Any reasonable doubt in this connection, which might or might not otherwise have existed, was apparently removed by the conflicting statements and admissions made by the appellant, and by his own testimony on the stand which rather clearly disclosed that he was not telling the truth. The question was one of fact for the jury and the evidence supports the verdict.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.