[Crim. No. 3526. First Dist., Div. Two. Nov. 20, 1958.]

THE PEOPLE, Respondent, v. CHARLES R. HICKENS, Appellant.

James J. Stark, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, J. F. Coakley, District Attorney (Alameda), and C. Zook Sutton, Deputy District Attorney, for Respondent.

MARTINELLI, J. pro tem.*—Defendant was charged by information with two counts of forgery. It was alleged that he made, altered, forged and counterfeited two Bank of America money orders and that he uttered, published and passed the same knowing them to be false, forged, altered and counterfeited.

Defendant admitted five prior convictions, three for forgery, one for passing fictitious checks and one for altering and passing United States obligations. The jury found defendant guilty of both counts, a motion for a new trial was denied and judgment was entered. Defendant appeals from the order denying the motion and from the judgment.

The evidence shows that on the afternoon of June 21, 1957, appellant entered the Towne Club in Oakland, California. He stated to Mr. Retales, the operator of the bar, that he worked for Mr. Epps whose business establishment was located nearby. Retales cashed a Bank of America money order for the sum of $71, dated June 19, 1957, and containing the names G. A. Epps as purchaser and C. R. Hickens as payee. Appellant endorsed the money order and received $70.70 and a beer.

This instrument had been issued on June 19, 1957, for the amount of $1.00. The purported signature of Epps was not his nor had he authorized appellant to sign that name. A handwriting expert testified that all the writing on the money order was appellant's.

Subsequent to June 21, Retales received several notes from appellant to the effect that appellant had reason to believe that the money order had been raised and expressing appellant's desire to regain possession of the instrument or make it good. Prior to his arrest appellant gave Retales $30.

Appellant maintained that he had been given the money order by one Larry Antone who stated that he had no identification and requested that appellant cash it for him in return for $5.00. Upon being assured by Antone that Epps was the purchaser of the instrument, appellant wrote in Epp's name as purchaser and his own as payee. Antone denied that

*Assigned by Chairman of Judicial Council.

he ever saw the money order or that he had given it to appellant.

On August 29, 1957, Mr. Oas, the operator of the "Golden West," a bar located in Oakland, cashed a Bank of America money order for $71.30, made payable to appellant and with Beale Construction Company as the purchaser. Appellant endorsed the money order and told Oas that it was payment for painting a truck. Both the name of the purchaser and appellant's name as payee were written by appellant. This money order was returned as raised, having been originally issued for $1.30.

Appellant later contacted Oas and informed him that he had reason to believe that the money order had been raised and that he wished to repay Oas. He visited the "Golden West" on October 10, 1957, and at that time was placed under arrest.

There was evidence of a similar offense involving the Woloski Used Car Company. As a partial down-payment on an automobile, appellant presented a money order payable to himself and with J. N. Beale as purchaser. The instrument was returned as having been raised. Before this appellant informed the company that he believed the check to have been raised and was permitted to reimburse them.

Appellant's defense as to the second money order was that two safe robbers, Richards and Goss, had forced him to cash it and the cashing of both money orders was part of a scheme to obtain from appellant a "thing" which he had invented which would open safes. Introduced in evidence by appellant were a postcard and some notes purportedly from Richards and Goss, stating that the money orders were raised and threatening to turn appellant over to the police. These were all written by appellant.

On November 12, 1957, appellant was visited in jail by a friend, Prescott Manning, Assistant Special Agent in Charge, United States Secret Service. Manning obtained from appellant written consent to search his residence and automobile. On the same day Manning, accompanied by appellant and two police inspectors, searched appellant's automobile. Appellant had directed Manning and the inspectors to the car parked on an Oakland street. Apparently nothing was found as a result of the search and on November 19, 1957, Inspector Busse with Manning searched the automobile which was then in a police parking lot. A brown bag containing three rubber

stamps and two stamp pads was found in appellant's automobile. One of the stamps, a "7," was definitely identified as having been used to raise the amount on the second money order.

The sole ground of the appeal is that the stamps should not have been allowed in evidence as they were obtained as the result of an illegal search made without a warrant approximately five weeks after appellant's arrest. Respondent answers that the search was legal in that the automobile was in police custody and, in addition, appellant consented to the search.

■ It was stipulated that no search warrant was obtained and, therefore, appellant asserts, the prosecution was required to show that the police custody was lawful. Appellant maintains that to show such lawful custody it was necessary to prove compliance with Motor Vehicle Code, sections 585 and 585.7, which sections set forth the procedure for dealing with abandoned vehicles.

Even if it is assumed that appellant is correct in his contention that the prosecution must show lawful custody of the automobile (*People* v. *Carswell*, 149 Cal.App.2d 395, 399 [308 P.2d 852]), the discussion concerning proper procedures for processing abandoned vehicles is not applicable.

Appellant was in jail and the evidence supports the inference that his automobile was parked on the street for approximately five weeks. The police were directed to the automobile by appellant. Specific intent necessary for abandonment was not present and it would seem a reasonable assumption that the automobile was impounded pursuant to a local ordinance (*cf.* Motor Veh. Code, § 585.1).

The evidence appears sufficient to support a determination that the custody was lawful and therefore its contents were legally in the possession of the police. (*People* v. *Ortiz*, 147 Cal.App.2d 248, 250 [305 P.2d 145]; *People* v. *Baker*, 135 Cal.App.2d 1, 5 [286 P.2d 510].)

Even if the lawful custody was not established the trial court was justified in determining that appellant consented to the search.

Appellant cites *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469], wherein our Supreme Court seems to indicate that a consent to search does not include consent to repeated searches. ■ The extent of the consent is a question of fact for the trial court just as the voluntary nature of the consent is such a question. (*People* v. *Gorg*, 45 Cal.2d 776, 782 [291 P.2d

469].) ■ Since appellant gave written consent to Manning and since Manning was present when the evidence was found, a finding of consent, so supported by evidence, is binding on this court. ■ Indeed, defendant told Manning that there was a package with "stamp things" in his car and that the stamps were in the glove compartment—"'I put it in there and I told Manning where to go to get it. I said, 'Be sure and save the letters for me.'" Thus we have consent coupled with directions to find.

■ Even if the consent did not by its terms extend to the second search the evidence should not be excluded if Inspector Busse made a reasonable mistake as to the extent of Manning's authority to search the automobile. (*People* v. *Ambrose*, 155 Cal.App.2d 513 [318 P.2d 181].)

■ Assuming that the evidence was inadmissible, its admission was not prejudicial. Appellant's attorney told the jury that the sole issue before them was whether or not there was intent to defraud and that the questions of alteration, raising and passing were resolved. The evidence that appellant possessed the stamps did not affect his testimony as to lack of intent.

■ In addition, even if the stamps were not in evidence, there was testimony by Manning that appellant asked him to remove a bag from the car because it contained stamps used to alter the money orders. It is manifest that a different verdict would not have resulted if this evidence was excluded. We do not feel that the admission of the evidence complained of, even if it were erroneous, operated to the prejudice of appellant's substantial rights or that it incurred a result which would not otherwise have been forthcoming.

The judgment and the order denying new trial are affirmed.

Kaufman, P. J., and Draper, J., concurred.