[Crim. No. 1407.   Fourth Dist.   May 20, 1959.]

THE PEOPLE, Respondent, v. JOSEPH ALBERT
SIMPSON et al., Appellants.

Gary Fenton Taylor, in pro. per., Thomas J. Fanning, under appointment by the District Court of Appeal, Enright, Von Kalinowski & Levitt and William B. Enright for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendants-appellants Joseph A. Simpson, Gary F. Taylor, and Francine D. Stevens were convicted by a jury of the crime of possession of narcotics (marijuana) on May 31, 1958, in violation of section 11500 of the Health and Safety Code. Defendant Simpson was charged with a prior conviction of a felony (grand larceny, first degree) in New York on June 5, 1947. What disposition, if any, was made of this charge is not indicated by the record. On request of defendant Taylor, his appeal was dismissed on January 19, 1959. Defendant Stevens appealed from the judgment and order denying a new trial, and defendant Simpson appealed from the judgment.

The principal contentions involved on this appeal are (1) that the court erroneously received in evidence a narcotic obtained by means of unreasonable search and seizure; (2) that the trial judge made various comments and rulings throughout the trial indicating bias and prejudice on his part and by reason thereof a fair hearing of the defendants was precluded; (3) that the evidence is insufficient to support the verdict; and (4) that the court erred in not instructing the jury on significant points of law.

The evidence shows defendant Simpson (aged about 28) and defendant Taylor (aged 18) lived in Oregon. Taylor owned a 1953 Chevrolet sedan with an Oregon license on it. Defendant Stevens (aged 18 on May 7, 1958) and Miss Struzen (aged 17) were considering leaving their homes in Oregon. Defendant Stevens said she intended to visit her father in Arcata, in Northern California. Miss Struzen decided to run away from home and go with her. She knew defendant Simpson and suggested he take her to California. Defendant Simpson contacted defendant Taylor and they all left that same day in Taylor's automobile. Taylor was told

that defendant Stevens agreed to pay the gasoline expenses and that Miss Struzen suggested they first go by way of Mexico. They left on May 27, and went to Reno, Las Vegas and Tucson, crossed the international border at Nogales, Mexico, obtained visa cards, and continued on to Hermosillo, where they stayed in a hotel overnight and returned to the border the next day. The previous nights they slept in the car while it was being driven by the two men drivers. They ate groceries obtained on the way. The girls said no improprieties occurred on the trip. On their return to Nogales, Mexico, Taylor ordered some "tea" (vernacular for marijuana) from a nearby taxi driver, and said he paid 25 cents for it. He testified he smoked a part of it in a pipe belonging to defendant Simpson, while waiting for the other occupants of his car to return, and that thereafter they drove to San Diego, arriving about midnight on the 31st of May. They pulled the car up to the curb in the lower part of town and all fell asleep. About 7 a.m. Officer Justice's suspicion became aroused. Miss Struzen was in the front seat next to the driver Taylor. Defendant Simpson (Negro) was asleep in the back seat on the left-hand side and defendant Stevens was asleep on the right-hand side. This officer testified he noticed the immaturity of the girls and he was suspicious they were juveniles under the age of 18 years and thought they may have run away from home. He observed the clothing they were wearing and they looked soiled "as though they had slept" in them. He awakened all of them and asked for identification. Both girls said they were 18. Defendant Stevens produced a vaccination certificate obtained at the border indicating she was 18. He questioned them as to the reason they were thus parked and they replied they were resting, just having returned from Mexico, and that they had originally started from Portland, Oregon. The car had Oregon license plates. A superficial observation was made of the car through the windows, and considerable clothing was strewn about in it. The officer asked Taylor if he would mind if he looked in the trunk of the car and Taylor opened it for him. Several suitcases were therein contained. No minute search was made. The officer called headquarters about the situation and defendants were asked to come out of their car. Subsequently they were asked if they would go to the police headquarters and answer a few questions. They left in the police car. There is a question as to whether Taylor's car was left locked at that time. The wind-wing had been broken

out. To unlock it was not difficult. On arrival at the station defendants were questioned. After relating their stories, which were conflicting, the officer placed charges of vagrancy (violation of Pen. Code, § 647, subd. 3, roaming about from place to place without any lawful business) against all of the defendants. The additional charge of suspicion of violation of the Mann Act and contributing to the delinquency of a minor was placed against the men defendants and all were lodged in jail. Miss Struzen was placed in the juvenile hall as a runaway. At the interview, one of the officers recognized defendant Taylor and asked if he had been implicated in a burglary and possession of marijuana on a prior occasion in San Diego about September, 1957, which involved this same car with an Oregon license. He denied it. A record so indicating was obtained and shown to him. In addition, it showed he was then an escapee from juvenile hall. He still denied this but later admitted it. One narcotic officer then said he suspicioned they were transporting marijuana in that car and he wanted to search it. Another officer said he was going out to impound the car and take it to the garage where they ordinarily kept impounded cars. They left together. This latter officer put his hand through the broken wind-wing and opened the left front door. He definitely testified he was returning to the car to impound it. It does appear that he did not make this positive statement at the preliminary hearing, but said he was returning to search it. He said he seated himself at the wheel and then, readying himself to take an inventory of the impounded car, as required, he looked up and saw something in a brown paper bag placed over the visor, and that he examined it and it had the appearance of marijuana. Another brown paper bag containing some substance was found tucked between the right rear seat cushion and the back cushion, partially protruding. Marijuana seeds and debris were found on the floor of the car, both front and back, and also an envelope containing a picture of Miss Struzen, together with other personal articles belonging to her, as well as an envelope addressed to defendant Stevens showing her father's address. All this evidence was taken by the officers. The car was taken to the garage. The officers returned to the station and again interviewed defendants. Defendant Taylor then admitted he paid 25 cents for some "tea" in Nogales, Mexico and said he and Simpson smoked part of it in a pipe the officers found in the car over the right visor.

At the trial he denied defendant Simpson had a part in

the smoking of the marijuana or in its possession. Taylor said he knew nothing about the bag of marijuana on the back seat but said Miss Struzen, in her sleep, overturned a bag of marijuana which was lying in the car, and that seeds and debris fell out and he put the bag over the visor. Simpson was asked if he ever had associations with the police and he replied he had once been a "look-out for a mugging." After the marijuana was shown to Taylor one officer asked him if he could go and make further search of his car and he told him he could do so. Marijuana seeds and debris were found on the floor in various places and the pipe was discovered over the visor. A chemist testified this debris, as well as the contents of the bags and the pipe, contained marijuana substance. It is conceded no search warrant was obtained to search the car at any time.

The question is, under this showing, was the trial court nevertheless authorized to admit exhibits in evidence over objection on the ground that the search of the car was unreasonable and unlawful. Defendants' argument is that the search was without consent, that from the evidence produced the officers were not justified in believing the offense here charged was being committed, either prior to or at the time the car was searched; that such search was not an incident to the arrest; that no offense was committed in the presence of the officers; and that defendants' arrest for vagrancy and other charges indicated was, under the evidence, unauthorized, citing such authority as *People* v. *Wilson*, 145 Cal.App.2d 1 [301 P.2d 974]; *People* v. *Sanders*, 46 Cal.2d 247 [294 P.2d 10]; *People* v. *Blodget*, 46 Cal.2d 114 [293 P.2d 57]; *People* v. *Molarius*, 146 Cal.App.2d 129 [303 P.2d 350]; *Hernandez* v. *Superior Court*, 143 Cal.App.2d 20 [299 P.2d 678]; and *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].

To defendants it might appear, as claimed by them, that their entire escapade was free from any suspicion or immoral propensities and the officer's suspicion that they were vagrants or violators of the Juvenile Court Law was unjustified. We would not want to hold that under this evidence the officer's suspicions were unfounded. Without discussing other arguments why it might be readily held, as the trial court did, that the search was authorized, it sufficiently appears that defendants were arrested and charged with a crime and were being held in jail on such charges. When an arrest is made without a warrant by a peace officer, the person

arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made. (Pen. Code, § 849.) Defendant Taylor's car was left on the street under the conditions above described. A police officer is authorized to remove a vehicle from the highway to the nearest garage, when he arrests any person driving or in control of a vehicle for an alleged offense, or where such officer is by the Vehicle Code or other law required to take the person arrested immediately before a magistrate. (Veh. Code, § 585, subd. (b)(5).) It thus appears the officers had a lawful right to impound the car and that, at the time, they had taken possession of it for that purpose. ▇▇ In *People* v. *Ortiz,* 147 Cal.App.2d 248 [305 P.2d 145], it was held, quoting from the syllabuses:

"A police officer who, on investigating a parked car during an early morning hour, discovered defendant lying on the front seat asleep, shook him and 'finally got him awake,' and then, after discovering that his breath was alcoholic and that defendant 'staggered badly, as he walked to the rear of his car,' arrested him for 'drunk auto,' could reasonably conclude that defendant was 'in control' of the vehicle, and not just a passenger, at the time of arrest, and hence was entitled to impound the car (Veh. Code, §§ 585, subd. (b), 585.2) and thus take possession of it.

"Where a police officer was properly making an inventory of the contents of a parked automobile prior to impounding it, marijuana found in a car during the course of making such inventory was not discovered as a result of an unreasonable search and therefore was not inadmissible in evidence.

"Where an automobile is lawfully in the custody of a peace officer, marijuana or other contraband articles contained in it are legally in his (possession) and their discovery by him is not a result of an unreasonable search.

▇▇ "An officer who is making a reasonable search of an automobile is not required to close his eyes to contraband he discovered simply because it is disconnected with the initial purpose of the search or not related to the crime for which defendant was arrested." (See also *People* v. *Baker,* 135 Cal.App.2d 1, 4 [286 P.2d 510]; *People* v. *Melody,* 164 Cal. App.2d 728 [331 P.2d 72]; *People* v. *Cook,* 146 Cal.App.2d 1 [303 P.2d 35]; 28 Ops. Atty. Gen. 185; *People* v. *Hickins,* 165 Cal.App.2d 364 [331 P.2d 796]; *People* v. *Ball,* 162 Cal. App.2d 465 [328 P.2d 276]; *People* v. *Collier,* 169 Cal.App.

2d 19 [336 P.2d 582]; *People* v. *Adame,* 169 Cal.App.2d 587 [337 P.2d 447].)

█ There is evidence that Taylor did authorize the officers, in the first instance, to open up and search the trunk of the car; that after finding the marijuana he again authorized another officer to go and search his car. Seeds and debris and the pipe were obtained under this authorized search. We conclude, under the circumstances here related, that no unlawful or unreasonable search of the car was made. The authorities relied upon by defendants are factually dissimilar.

Complaint is next made as to the conduct of the trial judge in reference to his rulings and numerous statements made during the trial of the case. In this connection it is argued, in effect, that the court rendered a service to the prosecution on cross-examining the defendants and in an endeavor to produce evidence of justification for the search; that the court's conduct amounted to advocacy and deprived defendants of a fair hearing, citing *People* v. *Huff,* 134 Cal.App.2d 182 [285 P.2d 17].

█ Without specifying each incident it does appear that the trial judge did make some unnecessary statements and cross-examined the defendants and other witnesses to a great extent, particularly when he thought an untruth was being related, or at least when he believed their explanation of certain facts was inconsistent with other facts fairly well established. This is not necessarily reversible error when it is done for the purpose indicated. Of course, care should be taken in so doing not to throw the weight of the judge's judicial position either for or against the defendant. From an examination of the entire record we cannot say that the conduct of the trial judge, and statements made by him, when considered as a whole, actually amounted to prejudicial misconduct justifying a reversal. █ Although it might reasonably appear to defendant that the court was endeavoring to aid the prosecutor in establishing some additional reasonable suspicion for the arrest of the defendants by the officer in the first instance, it appears that these efforts, if it should be so claimed, were thwarted by the honesty of the officer himself. The dialogue was as follows:

EXAMINATION BY THE COURT: ". . . Officer, they were asking about some other ordinance, do you know they have an

ordinance about sleeping in the streets? A. No, sir, I am not acquainted, Your Honor, with that ordinance.

"THE COURT: Do you know of any ordinance called the curfew where people are supposed to get off the streets at certain ages? A. Yes, sir, I am acquainted with that.

"THE COURT: Did you have that in mind when you picked up these folks? . . . A. Your Honor, I had more in mind that the girls were run-a-ways from Portland without permission from their parents to be in this area."

In view of the answer given, no prejudicial error resulted.

█ Objection was made as to the evidence admitted bearing on defendant Taylor's prior arrest on a narcotics charge while in this same automobile. It was received over objections as bearing on the question of knowledge and intent. As to Taylor it would appear that it was properly admitted. (*People* v. *Hatch*, 163 Cal. 368, 378 [125 P. 907]; *People* v. *Copeland*, 169 Cal.App.2d 713 [338 P.2d 1]; *People* v. *George*, 169 Cal.App.2d 740 [338 P.2d 240].)

The court instructed the jury, at defendant's request, that this line of evidence was only admissible as to defendant Taylor and not as to the other defendants (appellants herein). Taylor did not perfect his appeal. Appealing defendants were not prejudiced in relation to the reception of this evidence under the limitation given.

█ Defendant Stevens also argues that the court erred in not instructing the jury, on its own motion, more fully on the law as to the required knowledge on her part that the contraband was in the automobile or under her control, citing *People* v. *Gory*, 28 Cal.2d 450 [170 P.2d 433]; and *People* v. *Foster*, 115 Cal.App.2d 866 [253 P.2d 50]. The record is not clear whether defendants offered additional instructions on this subject which were not covered by instructions given. The argument is that the court failed to instruct that actual knowledge and possession are necessary for the offense, and that mere presence is insufficient. The court did instruct the jury to the effect that:

". . . a person is in possession of a narcotic when it is under his dominion and control and he knows that it is a narcotic, and knows that it either is carried on his person, or is in his presence and custody, or, if not on his person or in his presence, the possession thereof is immediate, accessible and exclusive to him, provided, however, that two or more persons may have joint possession of a narcotic if jointly and

knowingly they have the dominion, control and exclusive possession I have described.''

It appears to us that the suggested instructions of defendants were adequately covered by the instructions given by the court on the subject, and that the facts shown were sufficient to show such knowledge on the part of both appealing defendants. (*People* v. *Hoffman*, 195 Cal. 295, 312 [232 P. 974].)

Judgments and order affirmed.

Mussell, J., and Shepard, J., concurred.

The petition of appellant Francine Donalee Stevens for a hearing by the Supreme Court was denied July 15, 1959. Peters, J., was of the opinion that the petition should be granted.