[Crim. No. 4243. Fifth Dist. May 27, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNY WAYNE TAKENCAREOF et al., Defendants and
Appellants.

COUNSEL

Steve L. Bedient and John M. Hanley, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Nancy Sweet, David De Alba and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ANDREEN, J.**—Defendants Kenny Wayne Takencareof and Jeffrey Don Blomdahl appeal from judgments sentencing them to prison for second degree burglary.

The burglary for which they were sentenced was the first of three crimes perpetrated on the same evening against the St. Clair office building in Bakersfield. Two separate entries were made with the intent to commit larceny; finally the building was entered a third time and burned to destroy fingerprints. Several people were involved other than defendants. The burglaries caused minimal loss; the items taken were of little value. The arson, however, caused approximately $200,000 in damage to the structure, $50,000 to $75,000 loss to the contents and great inconvenience to the tenants, with considerable disruption of business.

Defendant Takencareof was suspected of complicity in the crimes. He was picked up and taken to the police department. Fingerprints were taken after the following exchange, described at trial:

"Q. [Defense Counsel] You didn't ask his permission to do this [take the prints]?

"A. [Bakersfield Police Detective Shockley] I didn't specifically say, 'Can I take your fingerprints', no.

"Q. You didn't tell him he had a right to refuse?

"A. No.

"Q. Okay. You just said in the police station 'I want a set of your prints', or words to that [e]ffect?

"A. Something to that [e]ffect, yes."

After comparing Takencareof's prints with latents taken inside the office building, Shockley advised Takencareof that the prints appeared similar. Takencareof conceded that they did look like the same fingerprints.

Following a *Miranda* advisement, Takencareof waived his rights and was interrogated. At first he denied complicity, but when told that the lab technician was on the way to the department to compare the fingerprints, Takencareof stated that he "would go for the burglary, but had nothing to do with the fire." Although Detective Shockley was acting in a good faith belief that the prints matched, subsequent analysis by a technician determined that they did not.

The two defendants were charged with two counts of burglary and one of arson, all of the same office building.

During trial, Takencareof withdrew his plea of not guilty to the first count of burglary and entered a plea of guilty. The jury acquitted him of the other two counts. Blomdahl was found guilty of the same count of burglary; the jury was unable to arrive at a verdict as to the other two counts. A mistrial was declared as to these two counts, followed by a dismissal in the interest of justice.

### Takencareof's Confession

Takencareof made a motion to suppress his confession at trial, which was denied.

As we understand the contention made in the trial court and on appeal, it is that Detective Shockley did not have probable cause to arrest Takencareof, so the confession should be suppressed.

■ At the outset we must address the threshold issue of whether the motion to suppress should have been raised in a pretrial motion.

Although it is true that as a general rule a defendant may move to suppress a confession when offered by the People during trial (*People* v. *Superior Court* (*Zolnay*) (1975) 15 Cal.3d 729 [125 Cal.Rptr. 798, 542 P.2d 1390]), the rule is unavailable where the confession is the product of an unlawful seizure. This follows because an unlawful detention is a seizure of the person in violation of the Fourth Amendment (*Dunaway* v. *New York* (1979) 442 U.S. 200 [60 L.Ed.2d 824, 99 S.Ct. 2248]; *People* v. *Richards* (1977) 72 Cal.App.3d 510 [130 Cal.Rptr. 158]) and Penal Code section 1538.5 is the proper means of raising a question involving seizure. (*People* v. *Massey* (1976) 59 Cal.App.3d 777 [130 Cal.Rptr. 581].)

The motion to suppress should have been raised before trial. (Pen. Code, § 1538.5.) Unless the opportunity for the motion did not exist or the defendant was unaware of the grounds for the motion, there is no right to make such a motion during trial. (Pen. Code, § 1538.5, subd. (h).)[1] There is nothing in the record to indicate that defense counsel was unaware of the grounds before trial or that he had no opportunity to make the motion earlier. A court which hears such a motion at trial when neither exception exists is not merely acting in excess of its power; it is acting in excess of its jurisdiction. (See generally, *People* v. *Superior Court* (*Edmonds*) (1971) 4 Cal.3d 605 [94 Cal.Rptr. 250, 483 P.2d 1202].) The fact that the district attorney did not object to the procedure is irrelevant.

---

[1] In 1970, the sentence: "Furthermore, the court in its discretion may entertain the motion during the course of trial" was amended out of the section. This deletion indicates a legislative intent that such a motion not be considered during trial unless either of the two specified conditions are met.

Since the requirements of Penal Code section 1538.5, subdivision (h), were not met, the issue is not cognizable upon appeal.[2]

## FACTORS CONSIDERED WHEN TAKENCAREOF SENTENCED

■ Although Takencareof was acquitted of the arson charge, the court clearly considered damage caused by the arson at the sentencing hearing. The court sentenced Takencareof as follows: "... probation will be denied, because the offense involved multiple victims, substantial loss to a large law firm, Mr. Siegel's business was destroyed, lives disrupted ...."[3]

Since neither of the two burglaries caused substantial damage, the reasons given by the judge for the sentencing (substantial loss to a law firm, destruction of a business and lives disrupted) must mean that the court was relying on the sequelae of the arson when making its sentencing choice. The court did not state why it did not feel bound by the jury's verdict of not guilty of the arson charge. We assume it was because the court believed that it should apply a different standard of proof to the sentencing determination. Whether this is appropriate is a matter of first impression. We address the issue of the proper standard—preponderance of the evidence of proof beyond a reasonable doubt—to be used in such a circumstance.

California Rules of Court, rule 439(b), provides that the preponderance of evidence standard should be used when determining whether circumstances in aggravation or mitigation have been established in order to determine whether the upper or lower term of imprisonment should be selected.[4] This is constitutionally permissible. (*People v. Nelson* (1978) 85 Cal.App.3d 99, 103-104 [149 Cal.Rptr. 177]; *People v. Ramos, supra*, 106 Cal.App.3d 591, 605-606.) By analogy, it would

---

[2]For an unexplained reason, defendant Blomdahl seeks review of this issue. However, his failure to make a specific, timely objection in the trial court precludes his present contention. (*People v. Privitera* (1979) 23 Cal.3d 697, 710 [153 Cal.Rptr. 431, 591 P.2d 919]; *People v. Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

[3]It should be noted that the trial court did not state its reasons for imprisonment as its sentencing choice as mandated under California Rules of Court, rule 439(d). Although error was committed, the articulation of the reasons for denial of probation cured the failure, providing that the reasons were sufficient. (Cf. *People v. Ramos* (1980) 106 Cal.App.3d 591, 599-600 [165 Cal.Rptr. 179].) Meaningful appellate review is possible in this case by examining the factors used in denying probation.

[4]The rule leaves unstated the test to be used during the balancing process. We need not address that issue here.

appear that the same standard should be used in determining whether to sentence to prison. Proof by a preponderance of the evidence is the standard in the absence of a statute or decisional law to the contrary. (Evid. Code, § 115.)

In *People* v. *Fulton* (1979) 92 Cal.App.3d 972, 976-977 [155 Cal. Rptr. 327], it was held that a charge in a multicount indictment on which the jury could not agree was properly used in aggravation. The rationale of the case was that under subdivision (b) of section 1170 of the Penal Code the sentencing court is entitled to look at the whole record of the case. In a footnote the court stated, "We do not here consider a case in which a jury has acquitted on the charge used as an aggravation." (*Id.*, at p. 976, fn. 1.)

We are now confronted with the question which was reserved in *Fulton.* We believe that in those cases where the defendant has not previously been restrained of his freedom by state action, and the trier of fact has found him not guilty of a count in a multiple count prosecution, the same standard of proof of beyond a reasonable doubt should apply to both conviction and sentencing.

It would be anomalous to hold that if the jury finds the defendant not guilty of a count utilizing the constitutionally exacting standard of proof beyond a reasonable doubt, he should face the same alleged crime at sentencing under a preponderance of evidence standard.

We are unprepared to hold that two standards operate simultaneously in a case where a defendant is acquitted. Such a holding would be ludicrous. A defendant who won a victory at the hands of the jury could nevertheless be subjected to a more harsh sentence if he was contemporaneously found guilty of another crime in the same case.

This reasoning is consistent with the holding in *People* v. *Richards* (1976) 17 Cal.3d 614 [131 Cal.Rptr. 537, 552 P.2d 97] which disapproved of a restitution order to a victim in a purported crime of which the defendant was acquitted. The words of the court are appropriate here: "In the course of convincing a jury to doubt his guilt on one charge, a defendant should not have the additional task of persuading the judge regarding the subsequent sentencing disposition on other charges." (*Id.*, at p. 624.)

The above reasoning is unaffected by the holdings in *In re Coughlin* (1976) 16 Cal.3d 52 [127 Cal.Rptr. 337, 545 P.2d 249] and *In re Dunham* (1976) 16 Cal.3d 63 [127 Cal.Rptr. 343, 545 P.2d 255]. In *Coughlin* the defendant was acquitted of burglary in the municipal court. Later, there was a hearing in superior court to determine whether his probation should be revoked. He was on probation following convictions of burglary and receipt of stolen property. (Pen. Code, §§ 459, 496.) It was held that evidence tending to prove that the defendant was guilty of the burglary could be admitted at the probation revocation hearing without violating due process principles or the proscription against double jeopardy. The reasoning of the court was that Penal Code section 1203.2, subdivision (a), authorizes revocation of probation when the court has *reason to believe* that he has violated any of the conditions of his probation.

As said in *In re Coughlin, supra*, 16 Cal.3d at pages 59-60: "[I]t is unquestionable that the probation decision necessarily involves an element of risk and consequent potential danger to a society that may be victimized. Premature release from imprisonment may soon result in a repetition of criminal conduct. Thus, decisions involving probation require the exercise of an *informed* discretion, following a careful balancing of the respective interests of the offender and the public generally. Such a delicate balance cannot be achieved by foreclosing the courts from consideration of evidence bearing directly upon the offender's willingness and ability to complete a successful period of probation. As stated in *People* v. *Andre, supra*, 37 Cal.App.3d 516 at pp. 520-521: 'Probation and parole are granted in the hope and expectation that the conditional release, under supervision, will better serve to rehabilitate a defendant than would supervised incarceration. The court, or the paroling authority, need not wait until the defendant proves, by new acts of criminality, that the hope and expectation were unfounded. *Acts short of criminality, or evidence which leaves a criminal violation still uncertain, may well, in the judgment of the court of authority, indicate that the hoped for rehabilitation is on the road to complete failure* and that a more restrictive process is required both to protect society and to assist the defendant toward ultimate rehabilitation.' (Italics added.)" (First italics original.)

In *Dunham* the court made a similar holding in reference to proceedings before the Adult Authority. Reliance was placed on the authority's "'delicate duty ... to decide when a convicted offender can be safely allowed to return to and remain in society [, the authority] is in a different posture than the court which decides his original guilt. To blind

the authority to relevant facts in this special context is to incur a risk of danger to the public which, at least as of this date, outweighs the competing considerations of a problematical gain in deterrence.' . . ." (*In re Dunham, supra,* 16 Cal.3d at p. 68.)

We recognize that the jury's finding on counts two and three in the instant case did not conclusively establish Takencareof's innocence, but merely found that the charges were not proven beyond a reasonable doubt. But he is in quite a different position than one who is on probation or parole. The violation of the probationer's or parolee's status subjects him to commitment or return to prison on the original charge if the decisionmaking body determines that his continued freedom is inimical to society's safety. Although the order of commitment in the instant case was on the basis of the burglary contained in the first count, Takencareof, a first offender whose liberty was not restricted by probation or parole, was in reality sent to prison on a charge of which he was acquitted. This was error.

## Additional Facts[5]

An understanding of the remaining contentions on appeal requires a recitation of additional facts.

Based upon police work which indicated that the culprits were at the home of Robert Rocha immediately after the arson, Detective Shockley talked to Rocha, who gave his permission to search the exterior of the premises. Such a search was conducted. This was on Wednesday, September 13, 1978. Shockley observed a boomerang in the yard but attached no significance to it. However, he later learned that one had been taken in the St. Clair burglary, so he made several trips back in order to obtain it. The trips were fruitless because Robert Rocha was not home. On Friday morning, September 15, he found Rocha at home and asked for the boomerang. Rocha entered the house, obtained it and presented it to him.

Later the same day, Shockley returned after learning that other items had been taken. Rocha was not home. He looked in two trash cans on the porch, one of which was covered, the other uncovered. In the latter he found several items taken from the office building, including some

---

[5]The remainder of the case has no precedential value. We would not add the following pages to the law libraries of this state if the proposed rules for partial publication of decisions were adopted.

check stubs. The check stubs contained the fingerprints of defendant Blomdahl.

### Blomdahl's Motion to Suppress

Just as there was no showing that the preconditions of Penal Code section 1538.5, subdivision (h), were met by Takencareof, the same is true as to Blomdahl. The question of whether the trial court erred in denying Blomdahl's motion to suppress evidence seized from Rocha's garbage can is not cognizable on appeal.

Had the issue been properly presented below, it would not have benefited Blomdahl. Viewing the evidence in the light most favorable to the trial court (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]) the issue turned on consent. The trial court found that the search of the trash can in which the check stubs containing Blomdahl's fingerprints were found was within the scope of the consent given by Rocha.

The contents of a trash can which has not been abandoned are entitled to a reasonable expectation of privacy. (*People* v. *Krivda* (1971) 5 Cal.3d 357, 366 [96 Cal.Rptr. 62, 486 P.2d 1262].) Rocha gave consent to search the premises two days earlier and continued cooperating the morning of the search, when he retrieved the boomerang for the officer from inside the residence. The search Friday was for the same purpose as the consent given on Wednesday. The trial court could conclude that the search was within the scope of the original consent. (*People* v. *Superior Court* (*Keithley*), *supra*, 13 Cal.3d 406, 410; *People* v. *Hickens* (1958) 165 Cal.App.2d 364, 368-369 [331 P.2d 796].)

### Sufficiency of Evidence to Sustain Blomdahl's Conviction

In addition to having his fingerprints on checks stolen from the burglarized premises, witnesses placed Blomdahl with the group of burglars from early evening until after the arson. A coparticipant, David Fernberg, testified at the trial that he did not remember whether Blomdahl burglarized the premises. However, he was impeached by his preliminary hearing statement that Blomdahl did enter the building. Blomdahl gave a false name to the California Highway Patrol officer on the night of the burglary. Finally, Rocha stated to Detective Shockley that he had seen Blomdahl with a boomerang.

This is ample evidence.

The California Supreme Court has had a recent opportunity in *People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738], to review the applicable substantial evidence standard in this state in light of the United States Supreme Court decision in *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781]. It was held in *Johnson* that traditional California standards meet all of the federally enunciated criteria.

■   Succinctly stated, the rule requires that substantial evidence support the conclusion of the trier of fact. The appellate court must consider not only the case of the prosecution, but the entire record, including the defense testimony, and may affirm only if the court finds that a reasonable finder of fact could, on the whole evidence, rationally have found guilt beyond a reasonable doubt. (*Jackson* v. *Virginia, supra*, 443 U.S. at p. 319 [61 L.Ed.2d at p. 573, 99 S.Ct. at p. 2789]; *People* v. *Johnson, supra*, 26 Cal.3d at pp. 575-578.) The test is met in the instant case.

### BLOMDAHL'S SENTENCING

Blomdahl's probation report contained one circumstance in mitigation (defendant not instigator) and five circumstances in aggravation: (1) the crime involved multiple victims; (2) the nature of the crime indicated a degree of premeditation; (3) the defendant involved minors in the commission of the crime; (4) the defendant's adjudications of the commission of crimes as a juvenile were numerous and of increasing seriousness; and (5) the defendant was on Youth Authority parole for burglary when he committed the crime. The report noted Blomdahl was presently on parole for a theft offense and although only age 19, had consistently involved himself in thefts over the past 4 years.

At sentencing, the probation officer noted that appellant had "been tried on local probation, and juvenile hall, Camp Owen and CYA. Gravity of the crime, considered, the amount of loss, I see no alternative." Blomdahl's counsel objected to consideration of factors relating to the arson offense—the count that was dismissed.

The court then ruled: "... the court will deny probation application, because of the fact that he was on parole, also on probation, and has not complied. And will deny probation for that reason. As to his record on January 3rd, 1975 [he] was found in violation of probation. In the

Juvenile Division for attempted theft. On June 4th, 1975 a supplemental petition was filed alleging two counts of burglary, cultivation of marijuana. That was found to be true. A stay on Camp Owen commitment was granted, or was stayed at that time. And on January 23, 1976 a supplemental petition was filed alleging burglary and malicious mischief. Found to be true. And he was committed to Camp Owen. May 1976 a supplemental petition alleging possession of marijuana was found true. He was re-committed to Camp Owen. October 28, 1976 a supplemental petition alleging joy-riding was found true. He was committed to California Youth Authority with a stay of execution on it, given a chance. On June 19, '77, a petition was found to be true of burglary, and he was committed to California Youth Authority. That stay of execution was set aside. He was paroled February 15, 1978. And then arrested for the immediate offense [a] few months later, September 15, 1978. So his record is extensive as stated by the probation officer. And his crimes are increasing in seriousness. The crime did involve multiple victims in the building, termed St[.] Clair Building. The nature of the crime indicated a degree of premeditation. Minors were involved in the commission of the crime. The court is also of the opinion that the defendant is unmotivated towards [*sic*] learning from his past mistakes. Because of his criminal behavior, in order to protect society, he must be imprisoned. The imprisonment would be the maximum of three years."

All of the factors relevant to the instant case cited by the court are applicable to the burglary charge (multiple victims, premeditation). There is no indication that the court relied on the arson charge on which the jury was unable to come to an agreement. (We do not hold that such reliance would be improper, see *People* v. *Fulton, supra*, 92 Cal.App.3d 972.)

There are ample factors justifying the imposition of the upper term.

The judgment of Blomdahl is affirmed. In reference to Takencareof, the judgment is affirmed, but the matter is remanded to the trial court for resentencing in accordance with the views expressed herein.

Hopper, Acting P. J., and Zenovich, J., concurred.