Filed 9/4/20  P. v. Bryant CA4/1
(unmodified opinion attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VINCENT BRYANT,<br><br>    Defendant and Appellant. | D075377<br><br>(Super. Ct. Nos. SCE384541,<br>SCS300549)<br><br>AMENDED ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 17, 2020, be modified as follows:

1. On page 25, footnote 16, delete the first sentence and replace with the following two sentences:

"In a petition for rehearing, Bryant argues that he raised the issue of the reasonableness of the eight-day delay in his reply brief in response to arguments that the People asserted in their respondent's brief. Even if we were to find that this explanation demonstrates good cause for the failure to raise this issue sooner, additional considerations persuade us that it would be unfair to consider the merits of Bryant's contention that the deputies' eight-day seizure of the backpack prior to obtaining the warrant was not justified by sufficiently exigent circumstances, or that they unreasonably delayed in obtaining the search warrant for Bryant's backpack, rendering the search unlawful."

There is no change in the judgment.

The petition for rehearing is denied.

This amended order vacates and supersedes the order modifying opinion and denying rehearing entered on September 3, 2020.

O'ROURKE, Acting P. J.

Copies to:  All Parties

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VINCENT BRYANT,<br><br>    Defendant and Appellant. | D075377<br><br>(Super. Ct. Nos. SCE384541, SCS300549) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A jury convicted Vincent Bryant of first degree burglary, grand theft, and receipt of stolen property.  The stolen items underlying each offense were

recovered from Bryant's backpack, which was seized by deputies at the time of Bryant's arrest and subsequently searched pursuant to a search warrant. Photographs of the backpack and its contents were introduced in evidence at trial.

Bryant, acting in pro per, brought several motions seeking suppression of the evidence obtained from his backpack on the ground that the deputies' seizure of the backpack violated his rights under the Fourth Amendment to the United States Constitution. The trial court denied the motions. Bryant, who is represented by appointed counsel on appeal, challenges these rulings, arguing that the court erred when it denied his suppression motions because the underlying evidence demonstrated that the deputies lacked probable cause to seize his backpack. We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Kirk P.'s belongings were stolen from his room at the Ayres Hotel in Alpine, California, in a sequence of events that began on August 27, 2018. That evening, Kirk and another hotel guest were drinking beer on the hotel's front patio when a man, identified at trial as Bryant, walked up and sat at the next table, rummaged through a plastic grocery bag, and occasionally chimed in on the men's conversation.

Later in the evening, Kirk was awakened by loud knocking at his hotel door. Kirk opened the door to find Bryant, who told Kirk that Kirk had to leave his hotel room, purportedly to deal with some "drunk women" who had just arrived at the hotel and were causing a commotion. Kirk left his room, leaving the door open, only to find that the "drunk women" were two elderly women who were checking into the hotel. When Kirk returned to his room,

2

he noticed that his cell phone was missing.  The next morning, he realized that his laptop was also gone.  Kirk's daughter reported the incident to police.

Deputy Sheriffs John Greene and Anthony Pratola responded to the hotel on the morning of August 28.  They conducted an investigation that included interviewing Kirk and his son Conner P.; viewing hotel video surveillance footage that showed a figure entering and then exiting Kirk's hotel room carrying a light-colored plastic grocery bag; and viewing surveillance footage from a nearby gas station where, according to Conner, Bryant had purchased cigars earlier in the evening.

Later in the afternoon of August 28, Deputies Greene and Pratola responded to a report of a disturbance at a Rite-Aid across the street from the Ayres Hotel.  When they arrived, they were directed to the person allegedly causing the disturbance, who was seated in the pharmacy next to a black backpack.  Both deputies immediately recognized the person as the man from the gas station video footage.[1]  A criminal records check confirmed that the man was Bryant and that he had a history of two recently cleared warrants for burglary and grand theft.  Conner subsequently identified Bryant in a curbside identification.

Greene and Pratola arrested Bryant and took him to the Alpine sheriff's station.  After Bryant asked to speak to a lawyer and refused to grant consent to search his backpack, Greene decided to release him but to retain custody of his backpack pending issuance of a search warrant authorizing a search of his backpack.  When Bryant was released, he was

---

[1]     The hotel surveillance video footage apparently was not clear enough to enable the deputies to identify the person who had entered and exited Kirk's room.

provided a certificate of release pursuant to Penal Code[2] sections 849, subdivision (b)(1), and 851.6.[3]

After obtaining a search warrant, Pratola opened the backpack and found Kirk's laptop and cell phone. He took photographs of the backpack and its contents and returned the laptop and cell phone to Kirk.

Bryant was arrested and charged in a criminal complaint with burglary of an inhabited dwelling, grand theft of personal property, and receipt of stolen property. He was represented by a deputy public defender at the preliminary hearing on October 3, 2018. At the conclusion of the preliminary hearing, the court set a motion cut-off date of October 17, 2018, and a trial date of November 19, 2018.

On the date that the trial was scheduled to begin, Bryant moved to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). The court granted the motion, finding that Bryant had knowingly and voluntarily waived his right to be represented by counsel. At the prosecution's request, the trial was continued for one week.

On November 26, 2018, the parties appeared for trial. During motions in limine, Bryant orally moved to suppress evidence obtained from his backpack on the ground that the seizure of the backpack violated his rights

---

[2]    All further statutory references are to the Penal Code unless otherwise indicated.

[3]    Section 849, subdivision (b)(1), provides that a person arrested without a warrant may be released from custody if "[t]he officer is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested." Section 851.6 states, in pertinent part, that a person arrested and released pursuant to section 849, subdivision (b)(1), "shall be issued a certificate, signed by the releasing officer or his superior officer, describing the action as a detention." (§ 851.6, subd. (a).)

under the Fourth Amendment. The court denied the motion, and Bryant was subsequently convicted on all counts.

Following his conviction, Bryant filed three posttrial motions in which he renewed his argument that the seizure of his backpack violated the Fourth Amendment. At the sentencing hearing on December 28, 2018, the court denied the motions and sentenced Bryant to a prison term of six years.[4] Bryant timely appealed.[5]

## III.

## DISCUSSION

Bryant, represented by appointed appellate counsel, challenges the trial court's denial of his oral motion to suppress brought on the first day of trial, as well as the trial court's denial of his posttrial motions. Bryant contends that the court erred in denying each of these motions because the seizure of his backpack was not supported by probable cause.[6] We reject this

---

[4]    Bryant was sentenced in two cases concurrently—the underlying action (case No. SCE384541) and case No. SCS300549, in which Bryant was convicted of grand theft auto and second degree burglary. The longest custodial term imposed on any of the counts of conviction was a six-year term imposed as to the first degree burglary conviction in case No. SCE384541. The court ran the sentences on all counts of conviction concurrently, for a total term of imprisonment of six years.

[5]    Bryant filed notices of appeal in Superior Court case Nos. SCE384541 and SCS300549, which were consolidated for purposes of appeal. However, his appeal concerns only case No. SCE384541.

[6]    Bryant also argues that the eight-day delay between the deputies' seizure of the backpack and their procurement of the search warrant was unjustified and therefore unreasonable. However, Bryant raised this issue for the first time in his reply brief, and as we discuss *post*, we deem the argument forfeited.

5

contention. As we discuss *post*, our reasons for doing so turn on the distinct factual and procedural issues presented by each motion.

A. *Motion to Suppress*

   1. *Additional Procedural Background*

On the first day of trial, the court heard motions in limine. During the in limine hearing, Bryant brought an oral motion under "the United States Constitution" which "speaks of illegal search and seizures," to suppress all evidence obtained from his backpack.[7] Bryant argued that the certificate of release presented to him upon his release from custody[8] represented a concession by the deputies that "there were no facts to arrest Mr. Bryant." Since his backpack was "an extension of" him, he argued, the deputies also necessarily lacked probable cause to justify the seizure of his backpack.[9]

The prosecution responded that Bryant's motion "should have been brought up before trial, with moving papers [and] with notice to the People outlining these arguments . . . . That has not been done. He cannot come the day of the trial with a jury waiting outside to raise a pre-trial motion that should have been brought a long time ago." As to the merits, the prosecution argued that "the deputies lawfully detained him. They seized the backpack. They obtained a search warrant signed by a reviewing judge. They searched

---

[7] Bryant initially sought suppression of the photographs of his backpack and its contents. The trial court subsequently clarified that Bryant was requesting suppression of all evidence obtained from the backpack.

[8] See footnote 3, *ante*.

[9] Bryant also challenged the sufficiency of the affidavit to support issuance of the search warrant, but he does not renew that challenge on appeal.

6

the backpack and then found a stolen computer and a stolen phone. [¶] So at the end of the day, even if the court will entertain the argument, we have a valid search warrant that was reviewed by a judge and felt there was probable cause to go in there and retrieve these stolen items."

In response to the prosecution's characterization of his motion as untimely, Bryant stated, "what I just heard from the D.A. is ineffective assistance of counsel. I was not my counsel. But he just said my lawyer was ineffective. This is a gross negligence."

The court responded, "Not quite. If anyone was going to bring any motion, whether it should or should not have been brought, I think the argument is that it should have been brought as [a] pre-trial motion and it is untimely brought at the time of trial. [¶] He is absolutely correct, but I don't see that as being an impediment to me hearing what you have to say."

The court proceeded to entertain the merits of the motion. In a colloquy with Bryant, the court analogized the situation to one in which a car is reported stolen, lawfully seized, and subsequently searched based on a valid warrant. Bryant countered that "[t]he backpack was never at the scene of the crime. It showed up the following morning a mile away." The court responded, "Now you are suggesting there was insufficient evidence to support the warrant. And I am ruling that once the warrant was obtained, the search of the backpack was lawful." The court proceeded to deny the motion.

2. *Analysis*

Characterizing his motion to suppress as a motion in limine, Bryant contends that the seizure of his backpack was not supported by probable cause and that the trial court thus erred in denying the motion.

7

The People argue that the motion is governed by section 1538.5 and that it was properly denied because it was untimely, violating the notice requirements for a section 1538.5 motion. With respect to the merits of the motion, the People contend that the deputies' seizure of Bryant's backpack was supported by probable cause.[10]

Bryant responds that the trial court's decision to consider the merits of the suppression motion reflects an implied finding that the motion was timely under section 1538.5.

Because the parties offer differing characterizations of the suppression motion, we first address the difference between a motion in limine and a motion under section 1538.5. Criminal defendants may seek suppression of evidence obtained from violation of certain constitutional rights through nonstatutory motions in limine. (See, e.g., *People v. Smithson* (2000) 79 Cal.App.4th 480, 494 [stating the voluntariness of a confession may be challenged "at different times during the process of prosecution" including in a "pretrial common law motion or motion in limine"]; *People v. Stansbury* (1993) 4 Cal.4th 1017, 1049 [trial court properly treated defendant's motion to suppress statements for claimed violations of Fifth and Sixth Amendment rights as a nonstatutory motion in limine rather than a motion pursuant to § 1538.5], rev'd on other grounds by *Stansbury v. California* (1994) 511 U.S. 318, 326.) Motions in limine may be brought "at the beginning of trial" or even "during trial when evidentiary issues are anticipated by the parties." (*People v. Morris* (1991) 53 Cal.3d 152, 188, disapproved on other grounds by *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn.1.)

---

10      The People offer additional justifications for the seizure and additional grounds supporting denial of the suppression motion. However, we do not reach these issues because we conclude that the motion was untimely.

A section 1538.5 motion, on the other hand, is the "sole and exclusive" procedure through which a criminal defendant can seek suppression of evidence obtained in violation of the Fourth Amendment. (§ 1538.5, subd. (m); *People v. Brooks* (1980) 26 Cal.3d 471, 475 (*Brooks*) ["Section 1538.5 provides a comprehensive and exclusive procedure for the final determination of search and seizure issues prior to trial."].)

The enactment of section 1538.5 "was chiefly aimed at redressing defects identified in the previously existing procedures: (i) the unnecessary expenditure of time and effort in allowing repeated challenges to the legality of a search or seizure during the course of a criminal proceeding; (ii) the waste of jury time in permitting search and seizure questions to be raised during trial, since the determination of these issues takes place outside the presence of the jury; and (iii) the lack of adequate opportunity for the prosecution to obtain appellate review of an adverse decision on a search and seizure question before trial commences and jeopardy attaches." (*Brooks*, *supra*, 26 Cal.3d at pp. 475-476.) "In accordance with these objectives, section 1538.5 requires that a defendant's motion for the return of property or suppression of evidence obtained as a result of a search or seizure be made at an early stage." (*Id.* at p. 476.)

Hearings pursuant to section 1538.5 are evidentiary proceedings during which the prosecution presents evidence demonstrating the reasonableness of the challenged government conduct. (§ 1538.5, subd. (c)(1) ["Whenever a search or seizure motion is made in the superior court as provided in this section, the judge or magistrate shall receive evidence on any issue of fact necessary to determine the motion."]; *People v. Johnson* (2006) 38 Cal.4th 717, 723 (*Johnson*) [holding that the evidence presented at a

§ 1538.5 hearing must be in the form of live witness testimony].)  A defendant moving to suppress evidence pursuant to section 1538.5 has an initial burden to establish a legal basis for the motion, which requires only that the defendant "mak[e] a prima facie showing that the police acted without a warrant." (*People v. Williams* (1999) 20 Cal.4th 119, 136 (*Williams*).)  Once the defendant satisfies this initial burden, "the burden of proving the justification for the warrantless search or seizure lies squarely with the prosecution." (*Johnson*, at p. 723, citing *Williams*, at pp. 136-137.)  The defendant may then challenge the adequacy of the prosecution's justifications.  (*Id.* at p. 136.)

The standard of review that generally applies to a trial court's resolution of a suppression motion reflects the evidentiary nature of a section 1538.5 hearing.  " ' "In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated.  [Citations.]" ' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1140, quoting *People v. Alvarez* (1996) 14 Cal.4th 155, 182 (*Alvarez*).)  " ' "The [trial] court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard.  [Citations.]  Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review.  [Citations.]  Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . .  is also subject to independent review." [Citation.]' " (*Ibid.*, quoting *Alvarez*, at p. 182.)

Bryant's motion sought suppression of evidence on the basis of an allegedly unconstitutional seizure and is therefore governed by section 1538.5.  The time limits for bringing a motion to suppress for a felony offense

10

are found in subdivisions (h) and (i) of section 1538.5, which provide: "(h) If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial. [¶] (i) If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion at a special hearing relating to the validity of the search or seizure *which shall be heard prior to trial and at least 10 court days after notice to the people*, unless the people are willing to waive a portion of this time." (§ 1538.5, subds. (h), (i), italics added.)

As the People correctly contend, Bryant's belated motion was brought with no notice and thus violated section 1538.5, subdivision (i). Bryant does not contend otherwise. Instead, he claims that by considering the merits of the suppression motion, the trial court impliedly found that the motion fell within one of the exceptions in section 1538.5, subdivision (h), which allow a suppression motion to be raised at trial.

At the outset, the record does not support Bryant's contention that the trial court made such an implied finding. A defendant whose motion satisfies section 1538.5, subdivision (h) is excused from the usual notice requirements and has "the right to make this motion during the course of trial." (§ 1538.5, subd. (h).) In effect, such a motion is not untimely even though it is raised at trial. It is clear that the court did not make the implied finding that Bryant claims because the court noted that the prosecution's objection that the motion was "untimely brought at trial" was "absolutely correct." The court's express determination that Bryant's motion was untimely dispels any

11

implication that it found otherwise when it nevertheless proceeded to address the motion's merits.[11]

Moreover, Bryant fails to establish a basis on which the court could have found that either of the exceptions set forth in section 1538.5, subdivision (h) applied. He appears to contend that because he had been granted the right to represent himself just one week prior to trial, he could not, personally, have brought the motion sooner. This argument has superficial appeal, because section 1538.5, subdivision (h) refers to the lack of a prior "opportunity" to bring a suppression motion, and Bryant arguably did not have the opportunity to file a suppression motion until after he began representing himself. However, interpreting section 1538.5, subdivision (h) to excuse a belated suppression motion on this ground would be inconsistent with both prior interpretations of section 1538.5, subdivision (h) as well as the statutory objectives of section 1538.5.

"The procedural scheme established by Penal Code section 1538.5 displays a strong legislative preference for litigating prior to trial the legality of searches and seizures." (*People v. Burke* (1974) 38 Cal.App.3d 708, 713 (*Burke*), citing *People v. Superior Court of Butte County* (1971) 4 Cal.3d 605, 610 *(Edmonds)*.) Hearing untimely motions at trial "thwarts one of the statute's purposes [citation] and misuses judicial resources." (*People v. Jackson* (1992) 7 Cal.App.4th 1367, 1370, fn.3 (*Jackson*).) Trial courts are

_____

11 The California Judges Benchbook: Search and Seizure (CJER 2019) states that "[s]ome courts treat an untimely [section 1538.5] motion as a motion in limine to exclude evidence," although it also notes that "[m]ost judges consider such treatment ill-advised . . . ." (Cal. Judges Benchbook: Search and Seizure (CJER 2019) § 6.79.) This appears to be what the trial court did here. As we discuss, such a practice is not merely ill-advised; it is in fact unauthorized.

thus not authorized to consider suppression motions at trial absent a showing satisfying section 1538.5, subdivision (h). (*People v. Takencareof* (1981) 119 Cal.App.3d 492, 496 (*Takencareof*), overruled on other grounds by *People v. Towne* (2008) 44 Cal.4th 63, 84-85.)

Section 1538.5, subdivision (h) has been interpreted narrowly to permit a trial court to hear a motion to suppress at trial only upon a showing of "an intervening change in the applicable law or the discovery of new evidence in support of suppression." (*Edmonds, supra,* 4 Cal.3d at p. 611.) In *People v. Martinez* (1975) 14 Cal.3d 533 (*Martinez*), defense counsel sought to bring a midtrial suppression motion based on an officer's testimony at trial, arguing that the officer had testified differently at the preliminary hearing and that counsel was thus "previously unaware of the grounds for suppression." (*Id.* at p. 537.) The Supreme Court held that counsel had failed to establish good cause under section 1538.5, subdivision (h), reasoning that defense counsel was not limited to the transcript of the preliminary hearing and could have learned the grounds for the suppression motion "by simply interviewing his client." (*Ibid.*) This holding has been construed as recognizing a due diligence requirement for a belated motion to suppress. (*People v. Frazier* (2005) 128 Cal.App.4th 807, 828 (*Frazier*).)

In *Frazier*, defense counsel sought to bring a suppression motion on the eve of trial, arguing that he had been belatedly retained and had only recently learned the relevant facts. (*Frazier, supra,* 128 Cal.App.4th at p. 828.) The trial court denied the motion as untimely based on the finding that the underlying evidence, which related to an allegedly unlawful search of the defendant's home, "appears to have been known to the Defense or should have been known. The facts are not new." (*Id.* at p. 829.) The Court of Appeal affirmed, reasoning that defense counsel had been representing

13

defendant for two months, that the facts of the searches were "central points in the case" and thus, that they "must have been within the knowledge of defendant." (*Ibid.*) The court also found that a different result would have the undesired effect of "encourag[ing] gamesmanship in the use of substituted counsel and delay of trials." (*Ibid.*)

In this case, as in *Martinez* and *Frazier*, the facts underlying Bryant's suppression motion relate to his arrest and subsequent release with a certificate of release—facts that were necessarily known to him since the inception of the case and thus were either known, or should have been known, to prior counsel. That Bryant could not *personally* have brought the motion sooner does not mean that the opportunity to bring the motion did not exist earlier; a suppression motion challenging the seizure could have been brought by Bryant's prior counsel, who was charged with acting on his behalf. Even if Bryant's decision to represent himself was motivated by a disagreement with his prior counsel over whether to file the motion, under *Martinez*, Bryant and his prior counsel were nevertheless required to act with due diligence in bringing Bryant's motion for self-representation, and there was no showing of such due diligence.[12] Also, a concern much like the one expressed by the Court of Appeal in *Frazier* pertains here, namely, that if a defendant granted the right to self-representation shortly before trial were thereby excused from complying with the notice requirements of section 1538.5 on the ground that he could not personally have filed the motion sooner, this might encourage gamesmanship in the form of belated *Faretta* motions. We therefore conclude that the late timing of Bryant's request for

---

[12] Bryant's *Faretta* motion was brought on November 19, 2018, the date initially set for trial and almost two months after the criminal complaint was filed on September 20, 2018.

self-representation, and his related inability to have personally brought the suppression motion sooner, is not a circumstance that satisfies section 1538.5, subdivision (h).

In a footnote, Bryant states, "[t]o the extent the People argue that the motion could have been brought earlier, the failure to do so falls on the defendant's prior counsel." This statement is unaccompanied by supporting argument or citation to legal authority. If it is meant as an allegation of ineffective assistance of counsel, it is wholly inadequate, and we are not required to consider it.[13] (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*) [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' "], quoting 9 Witkin, Cal. Procedure, (3d ed. 1985) Appeal, § 479, p. 469.)

Even if we were to consider whether Bryant's prior counsel was ineffective for failing to file a pretrial suppression motion, we would be unable to resolve the issue on the record before us. "Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission. In all other cases the conviction will be affirmed and

---

[13]  Whether a trial court is authorized to hear a suppression motion at trial upon the assertion that the failure to file a pretrial suppression motion was the result of counsel's ineffectiveness is undecided. (See Cal. Judges Benchbook: Search and Seizure, *supra*, § 6.84 ["It is unclear whether the court may hear a [section 1538.5, subdivision (h)] motion" on the ground that "unless the court hears the motion, the defendant would be denied effective representation."].) However, because Bryant has not explicitly raised this argument on appeal, we need not decide this issue now.

15

the defendant relegated to habeas corpus proceedings . . . ." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581-582.) Because the trial court decided the suppression motion without receiving any evidence, we have only a partial picture of the facts underlying the motion. Moreover, the record is silent as to the reasons a pretrial suppression motion was not filed. On this record, we cannot determine whether Bryant's counsel had a legitimate tactical reason for not pursuing such a motion. Any claim of counsel's alleged ineffectiveness is better pursued, if at all, in a habeas corpus proceeding.

We conclude that the trial court correctly determined that Bryant's suppression motion was untimely under section 1538.5. Although we do not doubt the court's good intentions, it erred when it nevertheless proceeded to consider the motion on its merits. A court that entertains a section 1538.5 motion at trial despite a defendant's failure to make the showing required by subdivision (h) "acts in excess of its jurisdiction" (*Takencareof, supra*, 119 Cal.App.3d at p. 496) and thereby "misuses judicial resources." (*Jackson, supra*, 7 Cal.App.4th at p. 1370, fn. 3; see *People v. Smith* (1973) 30 Cal.App.3d 277, 280 ["[A]ppellant's motion to suppress was improperly made for the first time at trial, and although the court chose to entertain the motion over the prosecution's objection on this basis, it was incumbent upon the court not to do so."].)

Moreover, by considering and ruling on the merits of the motion without conducting an evidentiary hearing, the trial court effectively allowed Bryant to sustain his initial burden to contest the legality of the seizure while simultaneously depriving the prosecution of the opportunity to present evidence justifying the deputies' actions. (*Williams, supra,* 20 Cal.4th at pp. 136-137 ["The prosecution has the burden of proving a justification for a warrantless search or seizure, not merely refuting the defendant's arguments

16

for why its justification is inadequate."].)  On appeal, unable to cite to evidence from the suppression hearing (because there was none) to establish the merits of their respective positions, the parties have resorted to relying on evidence from the trial.  However, one of the general principles of appellate law is that we review "only those matters which were before the court when it made its decision" (*Ramis v. Superior Court* (1977) 74 Cal.App.3d 325, 332); since the trial evidence was not before the court at the time it ruled on the suppression motion, we cannot rely on it to review the court's ruling.

"[I]t is a settled principle of appellate review that a correct decision of the trial court will be affirmed even if based on erroneous reasons . . . ." (*People v. Johnson* (2018) 21 Cal.App.5th 1026, 1032.)  The trial court correctly determined that the motion to suppress was untimely under section 1538.5.  Although the court erred in proceeding to consider the motion on its merits, the court nevertheless properly denied the motion.

B. *Posttrial Motions*

Bryant challenges the trial court's denial of his posttrial motions, again arguing that the deputies lacked probable cause to seize his backpack.

Reports of investigation prepared by Deputies Greene and Pratola were submitted as attachments to the posttrial motions.  Both deputies also testified at trial.  When the trial court ruled on Bryant's posttrial motions, it did so with the benefit of this evidence.  We therefore begin by summarizing the facts of the deputies' investigation and seizure of Bryant's backpack as they relate to the probable cause determination.

1. *Additional Factual and Procedural Background*

Greene responded to a report of theft at the Ayres Hotel at around 10:30 a.m. on August 28, 2018.  Once there, he interviewed Kirk about the

17

circumstances of the theft. Conner was present during the interview. Kirk said he had been drinking beers with another hotel guest on the hotel patio at around 8:00 p.m. the previous evening when an unknown man, described by Kirk as a 6 feet 4 inches tall Black male adult, joined them. After retiring to his hotel room to go to bed, Kirk was awakened at around 1:00 a.m. by the same unknown man knocking on his hotel door. The man told Kirk that there was something outside that Kirk that needed to see, pointing to elderly women who were walking upstairs. Kirk exited his hotel room, leaving the door open, and walked upstairs. When Kirk returned to his hotel room, he noticed that his cell phone was missing. The following morning, he realized that his laptop computer was also gone.

As he related these events to Greene, Kirk's speech was slurred. He told Greene that he thought he might have been drugged. Although he claimed to have consumed no more than five beers the night before, he still smelled of alcohol. Greene thought that Kirk seemed confused and found his story inconsistent.

Pratola arrived at the hotel as Greene was finishing his interview. Both deputies watched video footage of the incident recorded on a hotel surveillance camera. The footage showed a male adult walk to Kirk's hotel room at around 1:00 a.m. and knock on the door. Kirk could be seen opening the door, talking to the unknown male, and then leaving the room with the man and walking out of view of the camera. The man initially walked with Kirk but then returned to Kirk's room alone, entered carrying a white plastic grocery bag, and exited with the bag about a minute later.

Kirk's story made sense to Greene after Greene watched the video footage, which corroborated what had initially struck Greene as an unlikely account. As the deputies were leaving the hotel, Conner told them that he

18

had given the suspect a ride the night before to an Albertson's grocery store, where Conner had made a purchase, and then to a Shell gas station, where the man had purchased cigars. Conner gave the deputies his Albertson's receipt, which was time-stamped 10:22 p.m. The gas station manager was able to isolate surveillance video from shortly after 10:22 p.m. In the surveillance video, the deputies observed a man fitting the suspect's description purchasing cigars in the gas station store.

At around 1:30 p.m. on August 28, Greene and Pratola responded to a report of a disturbance at a Rite-Aid across the street from the Ayres Hotel. They were directed to the pharmacy, where they found the person who had reportedly caused the disturbance seated next to a black backpack. Both deputies immediately recognized this person as the man from the gas station surveillance video. They subsequently identified him as Vincent Bryant. Pratola conducted a criminal records check and was able to confirm Bryant's identity with a recent jail booking photo. The records check also showed that Bryant had two recently cleared warrants for grand theft and burglary. The deputies escorted Bryant outside and called Conner to the scene for an in-person identification. Conner said that he was "80-90 percent" certain that Bryant was the person he had given a ride the night before.

Based on this evidence, Greene believed that Bryant "was likely responsible for the theft." Greene also noted that Bryant's backpack "was heavy as if it contained a large amount of items inside it" and "was large enough[] to conceal Kirk's stolen property." The deputies placed Bryant under arrest, took possession of his backpack, and transported Bryant to the Alpine sheriff's station. There, Bryant requested to speak to a lawyer and refused to consent to a search of his backpack.

At this point, Greene decided to release Bryant from custody but to retain the backpack pending issuance of a warrant authorizing a search of the backpack. Greene suspected that Bryant was responsible for the theft but felt that he needed to gather more evidence to substantiate the charges that he intended to recommend. In his report, Greene explained that he was concerned that Kirk had seemed inebriated and complained of being drugged when recounting the events from the night before, and that because Kirk had been socializing with at least one other person apart from Bryant, it was possible that someone else might have been responsible for the crime. Accordingly, later in the day on August 28, Greene released Bryant with a certificate of release pursuant to sections 849, subdivision (b)(1) and 851.6 but retained custody of Bryant's backpack.

On September 5, 2018, Pratola applied for and received a search warrant authorizing the search of the backpack and seizure of the cell phone and laptop. Upon opening the backpack, he discovered Kirk's cell phone and laptop. Pratola took photos of the backpack with its contents and returned the stolen items to Kirk.

Bryant's posttrial motions were brought under section 1538.5. Bryant argued that the certificate of release, together with other facts that he claimed cast doubt on his culpability, established that the deputies lacked probable cause to arrest him and thus, also lacked probable cause to seize his backpack. He argued that the evidence obtained from his backpack should therefore have been suppressed and that he was entitled to a new trial.

At the sentencing hearing on December 28, 2018, the trial court denied the posttrial motions on two grounds: (1) that they were untimely under section 1538.5, and (2) that even if the motions were construed as motions for a new trial, they were meritless because they relied on the same arguments

20

that the court had previously considered and rejected when ruling on Bryant's previous motion to suppress.[14]

Bryant argues that the evidence before the trial court established that the deputies lacked probable cause to seize his backpack, and as a result, all evidence obtained from the backpack should have been suppressed. Bryant also maintains that the motions were not untimely under section 1538.5, because they "could have been deemed motions for a new trial," which are timely when raised at the sentencing hearing.

The People respond that the evidence before the trial court established probable cause for the seizure of Bryant's backpack.[15]

2. *Analysis*

"A trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion." (*People v. Davis* (1995) 10 Cal.4th 463, 524 (*Davis*).) " ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*Ibid.*, quoting *People v. Williams* (1988) 45 Cal.3d 1268, 1318.)

---

[14] The prosecution did not file an opposition to the posttrial motions. At the start of the sentencing hearing, the prosecutor indicated that he was not aware that any posttrial motions been filed. The court responded that it "did not solicit any response from the People" because "I didn't think that they were necessary. I was taking this one on my own[.]"

[15] The People offer additional justifications for the seizure that we do not reach because we conclude that the posttrial motions were properly denied on the ground that they were untimely, and because the record demonstrates that the seizure was supported by probable cause.

We begin with Bryant's contention that his posttrial motions were not untimely.  Section 1538.5 authorizes a suppression motion to be filed before trial or during trial, but not after trial.  (§ 1538.5, subds. (h), (i).)  Motions for a new trial are governed by section 1181, which sets forth specific statutory grounds on which a new trial may be granted.  (§ 1181, subds. (1)-(9).)  Although Bryant asserts that his otherwise untimely posttrial section 1538.5 motions could properly have been considered as if they were timely motions for a new trial, he offers no argument or citation to legal authority supporting this proposition.  This contention has therefore been waived.  (*Stanley*, *supra*, 10 Cal.4th at p. 793.)

Even if we were to consider this argument, we would find it unmeritorious.  Although section 1181 states that a new trial may be granted "in the following cases only" (§ 1181), "it is not true that the grounds specified in [section 1181] are the exclusive statutory grounds" for a new trial motion.  (6 Witkin, Cal. Crim. Law (4th ed. 2012) § 102, p. 144.)  A trial court may consider a motion for new trial where the failure to do so would result in a denial of the defendant's right to due process of law.  (*People v. Cardenas* (1981) 114 Cal.App.3d 643, 647 (*Cardenas*).)  However, in *Cardenas*, the court held that due process considerations did not permit a trial court to hear a motion for new trial on grounds that were already raised, and rejected, in a pretrial section 1538.5 motion.  The court reasoned that allowing such a practice would violate the prohibition against filing renewed pretrial section 1538.5 motions, and that prohibiting defendants from renewing arguments from a section 1538.5 motion via a new trial motion would not impair their due process rights, because subdivision (i) of section 1538.5 grants a defendant an even "greater" form of review, namely "the right to pretrial appellate review by more than one justice." (*Cardenas*, at pp. 648-649.)

22

This case is not entirely like *Cardenas*, in that Bryant did not file a pretrial suppression motion, and the court decided the motion that he brought at trial without considering evidence. Bryant has a statutory right to an evidentiary hearing, assuming a timely and proper section 1538.5 motion (§ 1538.5, subd. (c)), and his denial of this right would arguably result in a denial of his due process rights. However, Bryant's section 1538.5 motion was untimely, and although, in the trial court, Bryant blamed the failure to file a timely pretrial motion on his prior counsel's ineffectiveness, he has not properly raised this claim on appeal, as discussed, *ante*. Accordingly, even if we were to consider the unsupported assertion that the trial court properly could have considered Bryant's posttrial section 1538.5 motions as timely motions for a new trial, on this record and in light of the limited issues raised on appeal, we would find no manifest and unmistakable abuse of discretion in the trial court's decision to deny Bryant's posttrial motions as untimely. (See *Davis*, *supra*, 10 Cal.4th at p. 524.)

Further, even if we were to consider Bryant's next contention, namely that the seizure of his backpack was unlawful, we would conclude that the trial court did not err in denying his posttrial motions. Bryant argues, much as he did in the trial court, that his release from custody pursuant to sections 849, subdivision (b)(1), and 851.6, together with the doubts that Greene expressed regarding Kirk's version of events in discussing his decision to release Bryant from custody pending issuance of a search warrant, support the conclusion that the deputies acted without probable cause when they seized his backpack.

Bryant concedes that there is no dispute about the facts relevant to the probable cause determination. "Where the facts are not in conflict, the issue of probable cause is a question of law reviewable de novo on appeal." (*Cornell*

*v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 779; see *Ornelas v. United States* (1996) 517 U.S. 690, 697-699 [holding that probable cause determinations should be independently reviewed on appeal].)

" 'Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards.' " (*People v. Tran* (2019) 42 Cal.App.5th 1, 7, quoting *People v. Lenart* (2004) 32 Cal.4th 1107, 1118.) " 'The Fourth Amendment proscribes all unreasonable searches and seizures . . . .' " (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224, quoting *Katz v. United States* (1967) 389 U.S. 347, 351-352.) "[S]eizures of effects that are not authorized by a warrant are reasonable only because there is probable cause to associate the property with criminal activity." (*Soldal v. Cook County* (1992) 506 U.S. 56, 69.) "[L]aw enforcement officers are entitled to seize property pending issuance of a search warrant if they have probable cause to believe it contains contraband and the exigencies of the circumstances so demand." (*People v. Link* (1994) 26 Cal.App.4th 1272, 1277, citing *United States v. Place* (1983) 462 U.S. 696, 701; *Segura v. United States* (1984) 468 U.S. 796, 806 (*Segura*) ["[T]he Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible."].)

As we have already stated, the only challenge to the legality of the deputies' seizure of the backpack that has been properly raised on appeal is Bryant's allegation that the seizure was not supported by probable cause. In his reply brief, Bryant disputes whether sufficient exigencies justified seizing the backpack and keeping it until a search warrant was obtained, and contends that the eight-day delay between the seizure of the backpack on August 28 and the issuance of the search warrant on September 5 renders

the seizure unreasonable.  (See *Segura*, *supra*, 468 U.S. at p. 812 ["[A] seizure reasonable at its inception because based on probable cause may become unreasonable as a result of its duration."]; *United States v. Martin* (2d Cir. 1998) 157 F.3d 46, 54 [holding 11-day delay between agents' seizure of UPS package and procurement of warrant authorizing its search was not unreasonable].)  At oral argument, Bryant's appellate counsel argued at length about the purported lack of exigent circumstances justifying the eight-day seizure.  However, because Bryant raised these challenges for the first time in his reply brief, we decline to consider them.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408; *People v. Nelson* (2015) 240 Cal.App.4th 488, 497.)[16]  Therefore, our review of the justification for the

---

[16]     Additional considerations persuade us that it would be unfair to consider the merits of Bryant's contention that the deputies' eight-day seizure of the backpack prior to obtaining the warrant was not justified by sufficiently exigent circumstances, or that they unreasonably delayed in obtaining the search warrant for Bryant's backpack, rendering the search unlawful.  Bryant's initial suppression motion was filed without notice to the prosecution, and the trial court ruled on the motion without hearing evidence.  In addition, Bryant did not raise the issue of the purported lack of exigency or the delayed issuance of the warrant in the trial court.  The prosecution thus had no opportunity to present evidence of the reasons for the delay in the deputies' procurement of the search warrant.  The prosecution had no reason to explore the justifications for the delay during the trial, because this information would not have been relevant to determining Bryant's guilt.  Thus, the record on this issue is undeveloped and precludes meaningful review, a deficit attributable to Bryant's failure to raise this issue in a timely pretrial motion.  (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 (*Mendoza Tello*) ["An appellate court should not declare that a police officer acted unlawfully, suppress relevant evidence, set aside a jury verdict, and brand a defense attorney incompetent unless it can be truly confident all the relevant facts have been developed and the police and prosecution had a full opportunity to defend the admissibility of the evidence."].)

seizure is limited: we consider only whether, at the time the deputies seized the backpack, they had probable cause to believe that it contained contraband.[17]

We begin by addressing the contention that Bryant's release from custody pursuant to sections 849, subdivision (b)(1), and 851.6, indicates that the deputies lacked probable cause to arrest him or to seize his backpack. Section 849, subdivision (b)(1), provides that a person arrested without a warrant may be released from custody if "[t]he officer is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested." Section 851.6 states, in pertinent part, that a person arrested and released pursuant to section 849, subdivision (b)(1), "shall be issued a certificate, signed by the releasing officer or his superior officer, describing the action as a detention." (§ 851.6, subd. (a).) The argument appears to be that because Bryant's arrest was transformed into a detention by operation of these provisions, the underlying grounds supporting what was initially an arrest must have amounted to something less than probable cause.

---

[17] At trial, Bryant was permitted to fully explore the facts underlying his probable cause challenge. Bryant questioned Deputies Pratola and Greene at length about the circumstances of his arrest, his subsequent release under section 849, subdivision (b)(1), and the seizure of his backpack. In addition, Bryant was permitted to play the entirety of Greene's body camera footage, which included Greene's interview of Kirk and his viewing of the hotel surveillance video with Pratola and the hotel manager. Bryant attached to his posttrial motions both deputies' investigative reports, which discussed at length the facts underlying their decisions to arrest Bryant, release him, and to retain his backpack. The trial court took judicial notice of section 849. As a result, the record relating to Bryant's probable cause challenge is sufficiently developed to permit us to address it on the merits without running afoul of *Mendoza Tello*, *supra*, 15 Cal.4th at p. 267.

This same argument, known as the " ' "disappearing lawful arrest" ' trick," has previously been considered and rejected. (*Teter v. City of Newport Beach* (2003) 30 Cal.4th 446, 454 (*Teter*), quoting *Armondo v. Department of Motor Vehicles* (1993) 15 Cal.App.4th 1174, 1178 (*Armondo*), and *Behan v. Alexis* (1981) 116 Cal.App. 3d 403, 405 (*Behan*).) In *Armondo*, the appellant was arrested for drunk driving and was subsequently released with a certificate of release under sections 849, subdivision (b), and 851.6. She sought to challenge the suspension of her driver's license, arguing, in part, that her certificate of release demonstrated that her drunk driving arrest had not been supported by reasonable cause, as required to suspend her license. (*Armondo*, at p. 1179.) The court rejected this argument, reasoning that "[w]hether an arresting officer had reasonable grounds for initially arresting" a criminal suspect "is a different question than whether, having done so, the officer may determine there are insufficient grounds for bringing criminal charges against him or her. [Citation.]" (*Ibid.*) In *Behan*, faced with a similar challenge, the court decided "Once a lawful arrest, always a lawful arrest." (*Behan*, at p. 405.)

Bryant claims that we should distinguish *Armondo*, *Behan*, and *Teter* as involving different crimes (drunk driving in *Armondo* and *Behan*, and public intoxication in *Teter*) in the context of administrative, rather than criminal, proceedings. We disagree. As Bryant acknowledges, the statutory purpose of the release provisions embodied in section 851.6 "was to prevent hiring discrimination against persons who had been arrested, but not charged with any crimes." (*Armondo*, *supra*, 15 Cal.App.4th at p. 1178, citing *Behan*, *supra*, 116 Cal.App.3d at pp. 406-407.) Just as the courts in *Armondo*, *Behan*, and *Teter* found that the legislative objective of protecting

27

against hiring discrimination did not override the legislative goal of protecting the public from drunk drivers by suspending their licenses in an administrative proceeding, we can perceive no rational basis why the legislative purpose of preventing hiring discrimination should override the legislative goal of protecting the public from felony theft offenses like those at issue in this criminal proceeding. We therefore conclude, as did the courts in *Armondo*, *Behan*, and *Teter*, that Bryant's release under sections 849 and 851.6 had no bearing on the validity of his preceding arrest.

Moreover, our determination of the legality of the deputies' seizure must be based on federal constitutional standards, not state statutory procedures. " 'Our state Constitution . . . forbids the courts to order the exclusion of evidence at trial as a remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution as interpreted by the United States Supreme Court.' " (*People v. Camacho* (2000) 23 Cal.4th 824, 830; see Cal. Const., art. I, § 28, subd. (f)(2).) Pursuant to this constitutional mandate, our Supreme Court has held that compliance with state arrest procedures is irrelevant to determining the reasonableness of an arrest under the federal Constitution. (*People v. McKay* (2002) 27 Cal.4th 601, 611-618 (*McKay*).) "[S]o long as the officer has probable cause to believe that an individual has committed a criminal offense, a custodial arrest—even one effected in violation of state arrest procedures—does not violate the Fourth Amendment." (*Id.* at p. 618.) So too, compliance with state *release* procedures should not bear upon the constitutional validity of an arrest or seizure; under *McKay*, the only pertinent question is whether the arrest or seizure was lawful under the Fourth Amendment.

We therefore turn our focus to determining whether, under applicable federal constitutional standards, Deputies Greene and Pratola had probable

cause to seize Bryant's backpack.  Probable cause is determined by considering the information known to the officers at the time of the challenged seizure.  (*Beck v. Ohio* (1964) 379 U.S. 89, 91 (*Beck*).)  Probable cause exists when, based on the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place."  (*Illinois v. Gates* (1983) 462 U.S. 213, 238 (*Gates*).)

We conclude that the facts before the trial court established probable cause to seize Bryant's backpack.[18]  Kirk provided a detailed account of a somewhat strange story.  Although Kirk's demeanor while relating the events of the night before suggested to Greene that Kirk was still inebriated, and his account of the events struck Greene as disorganized, Greene agreed that Kirk's narrative was consistent in its essential details, including his description of the man who knocked at his door and convinced him to go outside and look at elderly women, and his subsequent discovery that his belongings had been stolen.  Moreover, the details of Kirk's account were fully corroborated by the hotel surveillance video.  In addition, Conner not only corroborated Kirk's description of the man Kirk said he had been sitting with on the hotel patio the night before; Conner also provided a time-stamped

---

[18]    The parties agree that after Conner identified Bryant, the deputies took possession of Bryant's backpack, placed Bryant under arrest, and transported Bryant and his backpack to the sheriff's station.  The backpack was seized within the meaning of the Fourth Amendment when the deputies took possession of it.  (See *United States v. Jacobsen* (1984) 466 U.S. 109, 113 ["A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."]; see also *Hayes v. Florida* (1985) 470 U.S. 811, 815-816 [holding that a seizure occurs under the Fourth Amendment when the police remove a person from a "place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes"].)

receipt that enabled the deputies to go to the Shell gas station and personally observe the suspect on the gas station's surveillance video footage.

Based on the information they had gathered, when Deputies Greene and Pratola encountered Bryant at the Rite-Aid and recognized him from the gas station surveillance video footage, they reasonably believed that he was the person who had been socializing with Kirk the night before, and that he was likely responsible for the theft. Bryant's recent history of arrests for burglary and auto theft provided additional support for their suspicion. Conner's subsequent in-person identification only added to what was already ample evidence identifying Bryant as the man who had knocked on Kirk's door in the middle of the night. The evidence of Bryant's likely culpability, coupled with the deputies' observations that Bryant's backpack "was heavy as if it contained a large amount of items inside it" and "was large enough[] to conceal Kirk's stolen property," made it objectively reasonable for the deputies to conclude that there was a "fair probability" the backpack contained the stolen items.[19] (*Gates*, *supra*, 462 U.S. at p. 238.) The deputies thus had probable cause to seize the backpack pending issuance of a search warrant.

As we have already discussed, Greene's subsequent decision to release Bryant does not, on its own, impact the probable cause analysis. Notably, Pratola testified at trial that he had not entirely agreed with the decision to release Bryant, indicating that the deputies had differing views of the

---

[19] Although both parties state in their briefs that Bryant was seen with the backpack on the hotel patio, the record reflects that this information was not known to the deputies at the time they arrested Bryant and seized his backpack. We therefore do not rely on this fact for our probable cause analysis.

sufficiency of the evidence to support a criminal complaint. More importantly, the probable cause determination relies on an objective assessment of the totality of the circumstances, not on the deputies' subjective impressions. (*Ohio v. Robinette* (1996) 519 U.S. 33, 39 ["Reasonableness . . . is measured in objective terms by examining the totality of the circumstances"]; *Beck*, *supra*, 379 U.S. at p. 97 ["If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police."].)

Even if we were to consider Greene's motives for releasing Bryant, his stated concerns do not persuade us that the deputies lacked probable cause to believe that Bryant had committed the theft or that his backpack likely contained the stolen items. One of Greene's concerns was that Kirk appeared to be inebriated while relating his account of the events, which is essentially a concern about Kirk's reliability as a witness. However, Kirk's account was corroborated by the hotel surveillance video on which the deputies were able to observe the theft as it took place. (See *Pollock v. Superior Court of Los Angeles County* (1969) 272 Cal.App.2d 548, 551-552 ("Evidence that reliance on a report from an informer was reasonable may be established by proof of past experience with the person giving the information or by the receipt of similar information from other sources, or by the personal observation of the police."])

Greene also expressed concern that Kirk had been socializing with others and that "it was possible" that someone other than Bryant was responsible for the theft. However, the possibility that another person might have committed the theft did not negate the probability that Bryant was the culpable party. (See *Gates*, *supra*, 462 U.S. at p. 235 [" '[Only] the

31

probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' "], quoting *Spinelli v. United States* (1969) 393 U.S. 410, 419.)

We conclude that the facts before the trial court on Bryant's posttrial motions demonstrated probable cause for the seizure of Bryant's backpack. The only aspect of the trial court's ruling on Bryant's posttrial motions that is properly before us on appeal is the court's implied finding that the seizure was supported by probable cause. Since we discern no error in the trial court's determination, we conclude that the court did not err in denying Bryant's posttrial motions.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.

32